1 | **LAQUER, URBAN, CLIFFORD & HODGE LLP**
Susan Graham Lovelace, State Bar No. 160913
2 |   Email: *Lovelace@luch.com*
Michael Y. Jung: State Bar No. 245260
3 |   Email: *Jung@luch.com*
200 South Los Robles Ave., Suite 500
4 | Pasadena, California 91101-2432
Telephone: (626) 449-1882
5 | Facsimile: (626) 449-1958

6 | Counsel for Plaintiffs, Trustees of the Operating Engineers Pension Trust, et al.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, TRUSTEES OF THE OPERATING ENGINEERS HEALTH AND WELFARE FUND, TRUSTEES OF THE OPERATING ENGINEERS VACATION-HOLIDAY SAVINGS TRUST, TRUSTEES OF THE OPERATING ENGINEERS TRAINING TRUST, TRUSTEES OF THE OPERATING ENGINEERS LOCAL 12 DEFINED CONTRIBUTION TRUST, ENGINEERS CONTRACT COMPLIANCE COMMITTEE FUND, and SOUTHERN CALIFORNIA PARTNERSHIP FOR JOBS FUND,<br><br>              Plaintiffs,<br><br>         v.<br><br>CORNERSTONE DEMOLITION CORP., a California corporation; and JIM R. RAWSON, an individual,<br><br>              Defendants. | CASE NO.: 5:22-cv-1627<br><br>**COMPLAINT FOR:**<br><br>1. **BREACH OF WRITTEN COLLECTIVE BARGAINING AGREEMENT AND VIOLATION OF ERISA § 515 [29 U.S.C. § 1145]**<br><br>2. **BREACH OF CONTRACT (SETTLEMENT AGREEMENT)** |

1659009

1
**COMPLAINT**

Plaintiffs, Trustees of the Operating Engineers Pension Trust, Trustees of the Operating Engineers Health and Welfare Fund, Trustees of the Operating Engineers Vacation-Holiday Savings Trust, Trustees of the Operating Engineers Training Trust, Trustees of the Operating Engineers Local 12 Defined Contribution Trust, Engineers Contract Compliance Committee Fund, and Southern California Partnership for Jobs Fund, complain and allege:

## JURISDICTION AND VENUE

1. This Court has jurisdiction of this case pursuant to section 502(e)(1) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") [29 U.S.C. §1132(e)(1)], which grants the United States District Courts jurisdiction over civil actions brought by a fiduciary pursuant to section 502(a)(3) of ERISA [29 U.S.C. §1132(a)(3)] to redress violations or enforce the terms of ERISA or an employee benefit plan governed by ERISA. Such jurisdiction exists without respect to the amount in controversy or the citizenship of the parties, as provided in section 502(f) of ERISA [29 U.S.C. §1132(f)].

2. This Court also has jurisdiction of this case pursuant to section 301(a) of the Labor Management Relations Act of 1947, as amended ("LMRA") [29 U.S.C. §185(a)], which grants the United States original jurisdiction over suits for violation of contracts between an employer and a labor organization in an industry affecting commerce, without respect to the amount in controversy and the citizenship of the parties.

3. Venue is proper in this Court pursuant to section 502(e)(2) of ERISA [29 U.S.C. § 1132(e)(2)], and section 301(a) of the LMRA [29 U.S.C. § 185(a)], in that this is the district in which the Plaintiffs' Trusts (defined below) are administered, the signatory union maintains union offices, and where the contractual obligation is to be paid.

4. To the extent this Complaint sets forth any state law claims, this Court has supplemental jurisdiction over those claims pursuant to 28 U.S.C. §1367(a).

# PARTIES

5.  Plaintiffs, Trustees of the Operating Engineers Pension Trust, Trustees of the Operating Engineers Health and Welfare Fund, Trustees of the Operating Engineers Vacation-Holiday Savings Trust, Trustees of the Operating Engineers Training Trust, and Trustees of the Operating Engineers Local 12 Defined Contribution Trust (collectively "Trustees"), are the trustees of five express trusts (collectively "Trusts") created pursuant to written declarations of trust ("Trust Agreements") between the International Union of Operating Engineers, Local Union No. 12 ("Local 12"), and various employer associations in the construction industry in Southern California and Southern Nevada. The Trusts are now, and were at all times material to this action, labor-management multiemployer trusts created and maintained pursuant to section 302(c)(5) of the LMRA [29 U.S.C. § 186(c)(5)]. All of the Trusts referenced above are administered by the Trustees in Los Angeles County. Plaintiffs, as Trustees of the Trusts, are "fiduciar[ies]" with respect to the Trusts as defined in section 3(21)(A) of ERISA [29 U.S.C. § 1002(21)(A)]. Plaintiff, Engineers Contract Compliance Committee Fund, was established by Local 12 in accordance with Section 6(b) of the Labor Management Cooperation Act of 1978 in order to improve job security and organizational effectiveness. Plaintiff, Southern California Partnership for Jobs Fund, is an industry-wide advancement fund established by the employers and Local 12. All plaintiffs are collectively referred to herein as the "Plaintiffs."

6.  At all times material herein, Local 12 has been a labor organization representing employees in the building and construction industry in Southern California and Southern Nevada, and a labor organization representing employees in an industry affecting commerce within the meaning of § 301(a) of the Labor-Management Relations Act of 1947, as amended [29 U.S.C. § 185(a)].

///

///

7. Plaintiffs are informed and believe, and thereon allege, that at all times material herein, Defendant, Cornerstone Demolition Corp. ("Cornerstone"), was and is a California corporation with its principal place of business in Ontario, California.

8. Plaintiffs are informed and believe, and thereon allege, that at all times material herein, Defendant, Jim R. Rawson ("Mr. Rawson"), was and is and individual residing in and/or doing business in Ontario, California.

## EXECUTION OF BARGAINING AGREEMENT
## AND STATUS OF PARTIES

9. On or about October 5, 2018, Cornerstone executed and delivered to Local 12 a written collective bargaining agreement ("Agreement") whereby Cornerstone agreed to be bound by the terms and conditions, with certain exceptions, of certain written and existing agreements between various multi-employer associations and Local 12. In particular, Cornerstone agreed to be bound by the written Master Construction Agreement ("Master Agreement") in effect between Local 12 and the Southern California Contractors Association, a multi-employer association ("Association"), as well as the incorporated Trust Agreements. At all times material herein, the Master Agreement has been a written collective bargaining agreement in effect between the Association and Local 12.

10. On or about October 5, 2018, Cornerstone executed written acknowledgments and acceptances of each of the Trust Agreements.

11. Cornerstone is an "*employer*," as that term is understood in the Master Agreement and related Trust Agreements.

12. Cornerstone is an "*employer*" as defined and used in section 3(5) of ERISA [29 U.S.C. § 1002(5)], and therefore, Cornerstone is "*obligated to make contributions to a multiemployer plan*" within the meaning of section 515 of ERISA [29 U.S.C. § 1145]. Plaintiffs are informed and believe, and thereon allege, that Cornerstone is also an "*employer*" engaged in "*commerce*" in an "*industry affecting commerce*," as those terms are defined and used in sections 501(1) and 501(3) of the

LMRA [29 U.S.C. §§ 142(1), 142(3)], and within the meaning and use of section 301(a) of the LMRA [29 U.S.C. § 185(a)].

# FIRST CLAIM FOR RELIEF

## Breach of Written Collective Bargaining Agreement and Violation of § 515 of ERISA [29 U.S.C. § 1145]

13. Plaintiffs hereby refer to, and incorporate herein, paragraphs 1 through 12 above, inclusive of any and all subparagraphs, to the same effect as if set forth verbatim.

14. Section 515 of ERISA [29 U.S.C. § 1145], provides *"[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."*

15. Cornerstone is an *"employer"* as defined and used in § 3(5) of ERISA [29 U.S.C. § 1002(5)], and is *"obligated to make contributions to a multiemployer plan"* within the meaning and use of section 515 of ERISA [29 U.S.C. § 1145].

16. By the terms and provisions of the Agreement, Master Agreement and related Trust Agreements, and at all times material herein:

　　a. Cornerstone agreed to prepare and submit true, complete and accurate written monthly contribution reports ("Monthly Reports") to Plaintiffs in a timely manner showing the identity of its employees performing work covered by the Master Agreement, the number of hours worked by or paid to these employees, and based upon the hours worked or amounts paid to employees, the proper calculation of the fringe benefit contributions due for such employees. The Monthly Reports are either submitted in hard copy or electronically through an online reporting portal. At all times material herein, Cornerstone has been obligated to submit its Monthly Reports and pay its contributions to Plaintiffs at Plaintiffs' administrative offices in Pasadena, California, on or before the 10th day of each successive month;

    b. Cornerstone agreed to permit Plaintiffs and their agents to conduct audits of payroll and related records in order to determine if fringe benefit contributions have been properly paid pursuant to the Master Agreement and related Trust Agreements; and

    c. Cornerstone agreed to pay to Plaintiffs fringe benefit contributions, benefits and/or withholdings on a monthly basis, and at specified rates for each hour worked by, or paid to, applicable employees. These amounts are due and payable at the Trusts' administrative offices in Pasadena, California.

  17. Cornerstone submitted Monthly Reports to Plaintiffs reflecting work performed by its employees during the months of July 2020 through November 2020 and May 2022 through July 2022. In those Monthly Reports, Cornerstone admitted that it owed Plaintiffs fringe benefit contributions totaling at least $53,336.25, but Cornerstone failed to pay or to timely pay to Plaintiffs the fringe benefit contributions due (a portion of which is included in the now breached settlement agreement discussed in the Second Claim for Relief below). Although Cornerstone paid a portion of these sums due pursuant to the settlement agreement discussed in the Second Claim for Relief below, at least $23,490.28 remains due for contributions based on Cornerstone's Monthly Reports for July 2020 through November 2020 and May 2022 through July 2022. This amount is due and payable at Plaintiffs' administrative offices in Pasadena, California. Failure to pay or to timely pay these contributions to Plaintiffs is a breach of the Master Agreement and Trust Agreements, and a violation of Section 515 of ERISA [29 U.S.C. § 1145]. Cornerstone's failure to timely pay fringe benefit contributions for work performed from May 2022 forward also represents a breach of the settlement agreement discussed in the Second Claim for Relief below.

  18. Plaintiffs are informed and believe, and based thereon allege, that Cornerstone has failed to pay certain additional amounts of fringe benefit

///

contributions not presently known to Plaintiffs. These additional amounts will be established by proof at the trial herein.

19. Cornerstone is "*delinquent*," as that term is used in the Master Agreement and related Trust Agreements.

20. Plaintiffs are informed and believe, and based thereon allege, that there is no legal excuse for Cornerstone's breach of its obligations under the Master Agreement and related Trust Agreements in violation of section 515 of ERISA [29 U.S.C. § 1145].

21. Cornerstone has failed to timely pay contributions and other amounts owed to Plaintiffs, accruing since July 2020. Pursuant to the Agreement and Master Agreement, Cornerstone agreed that in the event Cornerstone failed to pay fringe benefit contributions, or otherwise comply with the terms and provisions of the Master Agreement and related Trust Agreements, Cornerstone would be considered delinquent with the Trusts and would pay Plaintiffs the greater of $25.00 per month or ten percent (10%) of the total amount then due as liquidated damages for each delinquency.

22. Pursuant to section 502(g)(2) of ERISA [29 U.S.C. § 1132(g)(2)], in any action by a fiduciary in which judgment is found in favor of the plan, the Court shall award the plan: (a) the unpaid contributions, (b) interest on the unpaid contributions, (c) an amount equal to the greater of (i) interest on the unpaid contributions or (ii) liquidated damages provided for under the plan in an amount not in excess of 20% (or such higher percentage as may be permitted under federal or state law) of the amount determined by the Court to be unpaid contributions, (d) reasonable attorneys' fees and costs, and (e) such other legal or equitable relief as the Court deems appropriate. For purposes of section 502(g)(2) of ERISA [29 U.S.C. § 1132(g)(2)], interest on unpaid contributions shall be determined by using the rate provided under the plan or, if none, the rate prescribed under section 6621 of the Internal Revenue Code of 1986, as amended, 26 U.S.C. § 6621.

23. Pursuant to the written Operating Engineers Trust Funds Joint Contribution Committee Collection Policy & Procedures ("Joint Collection Policy") promulgated by the Plaintiffs Trustees pursuant to the authority granted to them by the Master Agreement and/or Trust Agreements, interest on unpaid or untimely paid fringe benefit contributions shall be calculated at 8% per annum. The Joint Collection Policy also provides that liquidated damages shall be assessed at 10% of unpaid or untimely paid contributions.

24. Pursuant to the Master Agreement, related Trust Agreements, Joint Collection Policy, and section 502(g)(2)(C)(ii) of ERISA [29 U.S.C. § 1132(g)(2)(C)(ii)], Cornerstone owes Plaintiffs liquidated damages in amounts that will be established by proof.

25. Pursuant to the Master Agreement, related Trust Agreements, Joint Collection Policy, and section 502(g)(2)(B) of ERISA [29 U.S.C. § 1132(g)(2)(B)], Cornerstone owes Plaintiffs interest calculated at 8% per annum from the respective due dates on all unpaid or untimely paid fringe benefit contributions. The exact amount of interest owed by Cornerstone to Plaintiffs will be established by proof.

26. By the Agreement, Master Agreement and related Trust Agreements, and Joint Collection Policy, Cornerstone agreed to pay Plaintiffs all legal and auditing costs in connection with the collection of any delinquency, whether incurred before or after litigation is, or was, commenced. Cornerstone owes Plaintiffs audit costs in amounts currently unknown to Plaintiffs that will be established by proof.

27. It has been necessary for Plaintiffs to engage legal counsel for the purpose of collecting said contributions and damages, and Plaintiffs are entitled to their reasonable attorneys' fees in connection therewith pursuant to the Agreement, Master Agreement, Trust Agreements, and section 502(g)(2)(D) of ERISA [29 U.S.C. § 1132(g)(2)(D)]. The exact amount of the legal fees due and payable has not been ascertained at this time. These amounts shall be established by proof.

///

28. Pursuant to section 502(g)(2) of ERISA [29 U.S.C. § 1132(g)(2)(E)], the Court may grant such other legal or equitable relief as the Court deems appropriate. As part of Plaintiffs' judgment, Plaintiffs shall request the Court to:

    a. Order Cornerstone to post and deliver either a good faith deposit, or a performance bond issued in favor of Plaintiffs in an amount determined by the Court to be appropriate, and

    b. Order the creation of a constructive trust on all applicable property and order the transfer of the applicable property to the Trusts, and

    c. Order Cornerstone to pay Plaintiffs all amounts due to the Trusts, including, but not limited to, all unpaid contributions, benefits, withholdings, damages, legal fees, audit costs and other expenses and damages incurred.

## SECOND CLAIM FOR RELIEF

*Breach of Contract (Settlement Agreement)*

29. Plaintiffs hereby incorporate by reference paragraphs 1 through 29 inclusive of sub-paragraphs, to the same effect as if set forth verbatim.

30. On or about January 8, 2021, Plaintiffs and Cornerstone entered into a settlement agreement ("First Settlement Agreement") to resolve a dispute over Cornerstone's failure to pay, or timely pay, fringe benefit contributions and other amounts owed to Plaintiffs pursuant to the Master Agreement related to work performed from July 2020 through November 2020. After making four installments under the First Settlement Agreement, Cornerstone defaulted under the terms of the First Settlement Agreement.

31. On or about February 1, 2022, Cornerstone and Mr. Rawson (collectively referred to herein as "Defendants") entered into another written settlement agreement ("Second Settlement Agreement") with Plaintiffs to resolve the balance due under the First Settlement Agreement. A true and correct copy of the Second Settlement Agreement is attached hereto as **Exhibit "A,"** and the terms and provisions of which are incorporated herein as if set forth in full.

32. Pursuant to the Second Settlement Agreement, Defendants, jointly and severally, agreed to pay to Plaintiffs, the principal amount of $33,327.02, plus amortized interest thereon at the rate of eight percent (8%) per annum accruing from December 8, 2021, by paying Plaintiffs $3,496.38 on or before March 1, 2022, and a like amount on or before the first (1st) day of each month until all principal and interest due under the Second Settlement Agreement has been paid in full. The Second Settlement Agreement also required Cornerstone to continue to timely report and pay fringe benefit contributions to Plaintiffs pursuant to the Master Agreement and Trust Agreements. Defendants agreed that if they breached the Second Settlement Agreement by failing to timely pay the monthly installments, and/or failing to adhere to the ongoing monthly contribution obligations under the Master Agreement, and subsequently failed to time cure any such breach, then the amount of $33,327.02, plus interest accruing at 8% per annum from December 8, 2021, less any payments received from Defendants under the Second Settlement Agreement, would become immediately due and owing and Plaintiffs would have the immediate right to file a lawsuit against Defendants to collect all amounts owed under the Second Settlement Agreement, Master Agreement, Trust Agreements and ERISA, including attorneys' fees and costs.

33. The Second Settlement Agreement expressly provides that in the event of any legal action or other legal proceeding concerning any term or condition contained therein or the enforcement of any provision therein, the prevailing party shall be entitled to its reasonable attorneys' fees, court costs and expenses.

34. Defendants breached the Second Settlement Agreement by failing to pay their installment payment of $3,496.38 due on July 1, 2022, and by failing to pay $11,092.90 in fringe benefit contributions (and related amounts) owed based on Monthly Reports for the May 2022 through July 2022 work months. Plaintiffs provided proper notice of the breach to Defendants pursuant to the terms of the Second Settlement Agreement. Defendants failed to timely cure the breach, resulting

in default under the Second Settlement Agreement. As of August 18, 2022, at least $20,892.56 remained due and owing to Plaintiffs under the Second Settlement Agreement.

35. There is no pending unsatisfied condition subsequent or legal excuse for Defendants' failure to comply with the terms of the Settlement Agreement.

36. As a result of Defendants' breach of the Second Settlement Agreement, Plaintiffs have suffered damages including but not limited to the following: compensatory damages, pre-judgment interest, attorneys' fees and costs, and such other and further relief as will be proved at the time of trial, or that the court may deem proper.

## PRAYER

**WHEREFORE**, the Plaintiffs pray for judgment against Cornerstone Demolition Corp., a California corporation, as follows:

1. For fringe benefit contributions of at least $23,490.28, plus additional amounts as proved;

2. For liquidated damages in amounts as proved;

3. For interest at the applicable rate(s) on all amounts due from their respective due dates and thereafter post-judgment in amounts as proved;

4. For damages for breach of contract of at least $20,892.56, plus additional amounts as proved;

5. For auditing costs incurred, in amounts as proved;

6. For reasonable attorneys' fees in amounts as proved;

7. For costs of suit incurred herein in amounts as proved; and

8. For such additional relief as this Court deems just and proper, including, but not limited to, the following:

   7.1 An Order for the creation of a constructive trust on all applicable property, and an Order for the transfer of the applicable property to Plaintiffs; and

///

      7.2    For a good faith deposit or performance bond in favor of Plaintiffs in an amount equal to the total amount determined by this Court to be due to Plaintiffs, as proved.

**WHEREFORE**, the Plaintiffs pray for judgment against Cornerstone Demolition Corp., a California corporation, and Jim R. Rawson, an individual, jointly and severally, as follows:

1. For damages for breach of contract in the amount of at least $20,892.56, plus additional amounts as proved;

2. For interest at the applicable rate on all amounts due from their respective due dates and thereafter post-judgment in amounts as proved;

3. For reasonable attorneys' fees in amounts as proved;

4. For costs of suit incurred herein in amounts as proved; and

5. For such additional relief as this Court deems just and proper.

DATED: September 14, 2022    LAQUER, URBAN, CLIFFORD & HODGE LLP

By:  /s/ - *Michael Y. Jung*
      Michael Y. Jung, Counsel for Plaintiffs

### WAIVER OF JURY RIGHT

DATED: September 14, 2022    LAQUER, URBAN, CLIFFORD & HODGE LLP

By:  /s/ - *Michael Y. Jung*
      Michael Y. Jung, Counsel for Plaintiffs