**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, TRUSTEES OF THE OPERATING ENGINEERS HEALTH AND WELFARE FUND, TRUSTEES OF THE OPERATING ENGINEERS VACATION-HOLIDAY SAVINGS TRUST, TRUSTEES OF THE OPERATING ENGINEERS TRAINING TRUST, TRUSTEES OF THE OPERATING ENGINEERS LOCAL 12 DEFINED CONTRIBUTION TRUST, ENGINEERS CONTRACT COMPLIANCE COMMITTEE FUND, and SOUTHERN CALIFORNIA PARTNERSHIP FOR JOBS FUND,<br><br>            Plaintiffs,<br><br>  v.<br><br>CORNERSTONE DEMOLITION CORP., a California corporation; and JIM R. RAWSON, an individual,<br><br>            Defendants. | 5:22-cv-01627-SSS-SHKx<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT [DKT. 34]** |

Before the Court is Plaintiffs' Motion for Default Judgment (the "Motion") against Defendant Cornerstone Demolition Corp. ("Cornerstone"). [Dkt. 34]. Plaintiffs are the trustees of five express trusts – Trustees Of The Operating Engineers Pension Trust, Trustees Of The Operating Engineers Health And Welfare Fund, Trustees Of The Operating Engineers Vacation-Holiday Savings Trust, Trustees Of The Operating Engineers Training Trust, Trustees Of The Operating Engineers Local 12 Defined Contribution Trust (collectively, the "Trustees") – Engineers Contract Compliance Committee Fund, and Southern California Partnership For Jobs Fund (the "Plaintiffs").

Having reviewed Plaintiffs' arguments, the relevant legal authority, and the record in this case, the Motion is **GRANTED**.

## I. BACKGROUND

This case arises out of various agreements between Plaintiffs and Cornerstone. [Dkt. 1 ¶¶ 9, 30]. On or about October 5, 2018, Cornerstone and International Union of Operating Engineers, Local Union No. 12 (the "Union") entered in a collective bargaining agreement (the "Agreement"). [Dkt. 36, Ex. B, "Agreement," at 1]. In this Agreement, Cornerstone agreed to be bound by two other contracts: the Master Construction Agreement (the "Master Agreement") in effect between the Union and the Southern California Contractors Association and the written declarations of trust (the "Trust Agreements") which gave rise to the trusts and Trustees bringing this present action. [Dkt. 1 ¶¶ 5, 9]. Cornerstone executed written acceptances of each of the Trust Agreements. [*Id.* ¶ 10].

Under all three contracts – the Agreement, Master Agreement and Trust Agreements – Cornerstone agreed to pay Plaintiffs monthly fringe benefit contributions for each hour worked by applicable employees and submit a corresponding monthly contribution report ("Monthly Report") to Plaintiffs properly calculating the benefits due. [*Id.* ¶ 16]. Over the months of July 2020

to November 2020 Cornerstone submitted Monthly Reports indicating it owed Plaintiffs fringe benefit contributions but failed to pay the amount due. [*Id*. ¶ 17].

On or about January 8, 2021, Plaintiffs and Cornerstone entered into a settlement agreement ("First Settlement Agreement") to resolve Cornerstone's non-payment over these months, but after making four installments, Cornerstone defaulted. [*Id*. ¶ 30]. On or about February 1, 2022, Cornerstone entered into another written settlement agreement ("Second Settlement Agreement") to resolve the balance due under the First Settlement Agreement. [*Id*. ¶ 31]. The Second Settlement Agreement also required Cornerstone to pay fringe benefit contributions pursuant to the Master and Trust Agreements. [*Id*. ¶ 32]. The Second Settlement Agreement additionally included that if Cornerstone breached, the principal sum of $33,327.02 plus interest would become immediately due and Plaintiffs would have the immediate right to sue under the Second Settlement Agreement, Master Agreement, Trust Agreements, and the Employment Retirement Income Security Act of 1974 ("ERISA"). [*Id*.].

Plaintiffs claim Cornerstone again breached its agreements. Over the months of May 2022 to July 2022 Cornerstone submitted Monthly Reports indicating it owed Plaintiffs fringe benefit contributions but failed to pay the amount due. [*Id*. ¶ 17, 34.] Cornerstone also failed to pay the July 2022 installment of the Second Settlement Agreement. [*Id*. ¶ 34].

Plaintiffs brought an action for (1) breach of the Agreement and violation of ERISA and (2) breach of the Second Settlement Agreement to recover the principal sum of $33,324.96, attorney's fees of $14,342.46, costs of $535.90, and post-judgment interest until the date the judgment is paid. [Dkt. 1 at 5, 9].

## II. PROCEDURAL HISTORY

Plaintiffs filed their Complaint on September 14, 2022. [Dkt. 1]. Plaintiffs supplied proof of service upon Cornerstone on October 14, 2022. [Dkt. 10]. On October 20, 2022 Plaintiffs filed a notice that Cornerstone and Jim. R. Rawson, the original named Defendants, filed for bankruptcy. [Dkt. 13]. This automatically stayed Plaintiffs claims. [Dkt. 14]. On February 23, 2023, Plaintiffs voluntarily dismissed Rawson from the case. [Dkt. 18]. On April 2, 2024, the matter was reinstated following the closure of Cornerstone's bankruptcy case. [Dkt. 26, 27]. Plaintiffs soon filed proof of service that Cornerstone was served with notice of the matter being reinstated. [Dkt. 28].

Pursuant to Plaintiffs' request, the clerk entered default against Cornerstone on May 29, 2024. [Dkt. 31]. On July 26, 2024, Plaintiffs entered its Motion for Default Judgment. [Dkt. 34]. The Court now turns to the Motion.

## III. LEGAL STANDARD

A court may enter default judgment against a defendant who has failed to plead or otherwise defend against an action after the clerk enters default. Fed. R. Civ. P. 55(b)(2). "The district court's decision whether to enter default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Seven factors—colloquially known as the *Eitel* factors—guide this discretionary decision: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). The facts in the complaint are taken as true and deemed admitted by virtue of the entry of default, except those regarding damages. *See*

Fed. R. Civ. P. 8(b)(6); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

## IV.   DISCUSSION

### A.   Procedural Compliance with Local Rule 55-1

As a threshold matter, the Court must determine whether Plaintiffs have complied with the procedural requirements of Local Rule 55-1, which coextensively governs applications for default judgment. Under this rule, an applicant must submit a declaration attesting to the following: (1) "[w]hen and against what party the default was entered"; (2) [t]he identification of the pleading to which default was entered; (3) "[w]hether the defaulting party is an infant or incompetent person"; (4) "[t]hat the Servicemembers Civil Relief Act (50 U.S.C. App. § 521) does not apply"; and (5) "[t]hat notice has been served on the defaulting party, if required by [Federal Rule of Civil Procedure 55(b)(2)]." C.D. Cal. L. R. 55-1.

Here, Plaintiffs satisfied these procedural requirements. In support of its Motion, Plaintiffs' counsel, Marija Kristich Decker, filed a declaration. [Dkt. 38]. In it, Decker attests (1) the Clerk entered default against Cornerstone,[1] (2) default was entered in response to Plaintiffs' Complaint, (3) the defaulting parties are not minors or incompetent, and (4) the defaulting parties are not in military service exempt from default judgment. *Id*. at 9. Because Cornerstone has yet to appear in this matter, the requirements of Federal Rule Civil Procedure 55(b)(2) do not apply. Thus, Local Rule 55-1 is satisfied.

---

[1] Decker mistakenly states default was requested on August 7, 2023 and entered August 8, 2023. However, Plaintiffs requested default on May 22, 2024 and default was entered on May 29, 2024. [Dkts, 30, 31]. Although Decker's mistake does technically violate Local Rule 55-1's requirements, the Court makes an exception in this case for the sake of judicial efficiency.

**B.     The *Eitel* Factors**

The Court next turns to whether entry of default judgment against Cornerstone is appropriate by weighing the seven *Eitel* factors. Here, as discussed below, the Court **GRANTS** Plaintiffs' Motion.

**1.     Prejudice to Plainitffs**

The first *Eitel* factor considers the possibility plaintiffs will suffer prejudice if default judgment is not entered. *Eitel*, 782 F.2d at 1471. Here, Cornerstone has failed to appear in, litigate, or acknowledge this matter. As such, absent the Court entering default judgment, Cornerstone will suffer prejudice because it has no other recourse for recovery. *See also Sec. and Exch. Comm'n v. Harrison*, No. 8:21-cv-01610-SPG-DFM, 2022 WL 17327325, at *4 (C.D. Cal. Oct. 4, 2022); *Sec. and Exch. Comm'n v. Baccam*, No. ED CV 17-0172 SJO (SPx), 2017 WL 5952168, *4 (C.D. Cal. June 14, 2017). Accordingly, this factor weighs in favor of entering default judgment.

**2.     Merit of Plaintiffs' Claims and Sufficiency of the Complaint's Allegations**

Often considered together, the second and third *Eitel* factors assess the merits of Plaintiffs' claims by addressing whether they have adequately alleged facts to state a claim under its causes of action. *Eitel*, 782 F.2d at 1471; *U.S. Sec. and Exch. Comm'n v. C3 Int'l, Inc.*, No. 8:21-CV-01586-CAS (PDx), 2022 WL 16814859, at *4 (C.D. Cal. Nov. 7, 2022). The facts in the Complaint are taken as true and deemed admitted, except those regarding damages. *Televideo*, 826 F.2d at 917-18.

**i.     Violation of ERISA**

Section 515 of ERISA commands "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not

inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

Cornerstone is an "employer" under ERISA. *See* 29 U.S.C. § 1002(5). Per the Agreement, Master Agreement, and Trust Agreements, Cornerstone agreed to pay to Plaintiffs' fringe benefit contributions, benefits, and/or withholdings every month at specified rate for each hour worked by, or paid to, applicable employees. [Dkt. 1 ¶ 16; Dkt. 36, Exs. B, C, D, E]. From May 2022 to July 2022, Cornerstone reported in its monthly reports to Plaintiffs that it owed Plaintiffs fringe benefit contributions. [Dkt. 36 ¶ 19]. A portion of these contributions remain unpaid. [*Id*. ¶¶ 19, Ex. J]. Failure to pay these contributions is a breach of the Master Agreement and Trust Agreements, and a violation of ERISA. [Dkt. 36, Exs. B, C, D, E]. 29 U.S.C. § 1145. Under ERISA, a civil action may be brought by a fiduciary, such as Plaintiffs, to enforce Section 1145. 29 U.S.C. § 1132(g)(2). The Court finds Plaintiffs adequately state a claim under ERISA.

### ii. Breach of Second Settlement Agreement

The elements for breach of contract are: (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damages to plaintiff. *Oasis W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (2011).

Here, Plaintiffs and Cornerstone entered into the Second Settlement Agreement on February 1, 2022 to resolve their disputes stemming from Cornerstone's defaults in the Agreement, Master Agreement, and First Settlement Agreement. [Dkt. 36, Ex. G]. Plaintiffs performed by temporarily releasing Cornerstone of its financial and legal obligations to Plaintiffs, pending performance under the Second Settlement Agreement. [*Id*.]. Cornerstone failed to make an installment payment on July 1, 2022, and failed to pay fringe

benefits from May 2022 to July 2022 in violation of the explicit terms of the Second Settlement Agreement. [*Id.*; Dkt. 1 ¶ 34]. Per the terms of the Second Settlement Agreement, the entire principal became due and Plaintiffs were granted the immediate right to file lawsuit against Cornerstone to collect. [Dkt. 1 ¶ 32]. As of August 18, 2022, thousands of dollars remain due to Plaintiffs under the Second Settlement Agreement resulting in financial injury. [*Id.* ¶ 34]. Thus, Plaintiffs adequately state a claim for breach of contract.

As such, the second and third *Eitel* factors weigh in favor of entering default judgment on Plaintiffs' claims.

### 3. Sum of Money at Stake

The fourth *Eitel* factor balances the amount of money at stake relative to the seriousness of Defendant's conduct. *Eitel*, 782 F.2d at 1471; *C3 Int'l*, 2022 WL 16814859, at *6. If the money at stake is proportional to Defendant's conduct, this factor will weigh in favor of entering default judgment. *Baccam*, 2017 WL 5952168, at *7. In all, Plaintiffs seek $48,203.32. [Dkt. 35 at 25]. For the reasons stated below, the Court modifies Plaintiffs damages to be proportional to Cornerstone's conduct.

#### i. Second Settlement Agreement

Plaintiffs seek the principal owed under the Second Settlement Agreement. [Dkt. 35 at 25]. Under the Second Settlement Agreement, Cornerstone agreed to pay to the Trusts the principal sum of $33,327.02 plus amortized interest at the rate of 8% per annum accruing from December 8, 2021. [Dkt. 36, Ex. G]. Following Cornerstone's default, Plaintiffs credited all payments made by Cornerstone. [Dkt. 36 ¶ 17]. Cornerstone owes Plaintiffs $24,244.21 under the Second Settlement Agreement, inclusive of interest. [Dkt. 36 ¶ 17, Ex. H]. The Court finds this amount to be proportional to

-8-

Cornerstone's conduct. The Second Settlement Agreement clearly defines the scope of what is owed to Plaintiffs.

### ii. Fringe Benefit Contributions

Plaintiffs additionally seek $5,002.89 of fringe benefit contributions related to work performed from May 2022 to July 2022. [Dkt. 35 at 25]. Cornerstone admits to owing Plaintiffs $13,604.58 in its required monthly reports. [Dkt. 36, Ex. I]. Cornerstone paid late $8,601.69 such that $5,002.89. is still due to Plaintiffs [Dkt. 36 ¶ 19]. This is proportional because ERISA provides for the recovery of unpaid contributions. 29 U.S.C. § 1132(g)(2).

### iii. Prejudgment and Additional Interest

Under ERISA, a fiduciary can collect interest on the unpaid contributions. 29 U.S.C. § 1132(g)(2)(B). The interest owed for the unpaid fringe benefits contributions for work performed from May 2022 to July 2022, calculated at 8% per annum pursuant to the Collection Policy of the Union, is $2,038.93. [Dkt. 36, Ex. J]. Additionally, ERISA provides that a court shall award the greater of interest on unpaid contributions or liquidated damages provided for under the plan in enforcing Section 1145. 29 U.S.C. § 1132(g)(2)(C). Here, the interest is greater than the liquidated damages of $1,360.46, and thus may be awarded as additional interest. Because Plaintiffs interest is calculated by federal statute, the Court also finds this sum proportional.

### iv. Attorney's Fees

Plaintiffs also seek to recover attorney's fees. [Dkt. 35 at 25]. As instructed by Local Rule 55-3, Plaintiffs may retrieve $1,200 plus 6% of the amount over $10,000 in judgment, or $2,627.73. However, Plaintiffs seek $14,342.46 of attorneys' fees. [*Id.*].

Plaintiffs argue ERISA's mandate to courts to award "reasonable attorney's fees" when finding a violation of Section 1145 requires the "lodestar/multiplier approach." 29 U.S.C. § 1132; *see McElwaine v. US W.,*

-9-

1 *Inc.*, 176 F.3d 1167 (9th Cir. 1999) ("At the outset, we note that attorney fees
2 under § 1132(g)(1) are calculated using a hybrid lodestar / multiplier
3 approach"). [Dkt. 35 at 16].

4     While this is a persuasive argument, it is perhaps less persuasive in a
5 motion for default judgment, where attorneys conduct far less work than the
6 typical case in which opponents file any responsive pleading. Because of the
7 one-sided nature of motions for default judgment, this Court's Local Rules
8 generally follow a set schedule of attorney's fees.

9     However, under both ERISA and the Local Rules, this Court does have
10 the discretion to determine "reasonable attorney's fees" in the context of this
11 motion. According to Plaintiffs own supporting declaration of a certified public
12 account, $210.00 per hour for attorneys and $120.00 per hour for paralegals is
13 reasonable. [Dkt. 37 at 2]. Therefore, for the 28.4 hours worked by attorneys
14 and 27.8 hours worked by paralegals, the Court finds $9,022.00 a reasonable
15 amount of attorney's fees.

16                                   **v.    Filing Costs**

17     Plaintiffs have incurred costs of $535.90, including $402.00 filing fee for
18 the Complaint, and $133.90 for the service of process fees. [Dkt. 38 ¶ 6].
19 These fees are proportional to Cornerstone's conduct, particularly because the
20 Second Settlement Agreement provides upon breach, Plaintiffs have the
21 "immediate right to take any and all legal actions to collect the amounts due."
22 [Dkt. 36, Ex. G].

23                                **vi.    Post-judgment Interest**

24     Lastly, Plaintiffs seek post-judgment interest at the statutory rate. [Dkt.
25 35 at 25]. However, Plaintiffs do indicate which statute or what rate entitles
26 them to this award. There's not a mention of post-judgment interest in their
27 three filed declarations supporting this Motion, and only two brief mentions of
28 "post-judgment interest at the statutory rate" in their memorandum. [Dkt. 35 at

25, 28; *see* Dkts. 36, 37, 38]. The Court cannot grant judgment on an undisclosed amount.

For the above reasons, the Court finds Plaintiffs requested sum of $48,203.32 to be disproportional, but the modified sum of $42,204.39 to be proportional to Cornerstone's conduct.

### 4.  Possibility of a Dispute About the Material Facts

The fifth *Eitel* factor considers the possibility of a dispute about Defendants' conduct. *Eitel*, 782 F.2d at 1471-72. Again, the facts in the Complaint are taken as true and deemed admitted, except those regarding damages. Fed. R. Civ. P. 8(b)(6); *Televideo*, 826 F.2d at 917-18.

Here, because Cornerstone failed to file an answer, the Court deems admitted and true Plaintiffs allegations that Cornerstone violated ERISA and breached the Second Settlement Agreement. There remains little possibility of a dispute about these material facts, weighing in favor of entering default judgment.

### 5.  Possibility Default Was Due to Excusable Neglect

The sixth *Eitel* factor considers the possibility that the entry of default was due to Defendant's excusable neglect. *Eitel*, 782 F.2d at 1472. Various courts have held that defendants' failure to appear "despite being served with the complaint" indicate defendants' defaults are not due to excusable neglect. *See Kwon*, 2021 WL 3193225, at *3 (citing *Adobe Sys. Inc. v. Kern*, No. 09-1076-CW(JL), 2009 WL 52180005, at *6 (N.D. Cal. Nov. 24, 2009)). Here, Cornerstone was served with the summons and Complaint on October 1, 2022. [Dkt. 10]. Because Cornerstone was served with the Complaint and "failed to act despite [being given] an opportunity to do so[,]" the Court finds this factor weighs in favor of entry of default. *Adobe Sys. Inc.*, 2009 WL 52180005, at *6.

### 6. Strong Policy Favoring Decision on the Merits

The seventh *Eitel* factor requires this Court to account for the strong policy favoring that this case be resolved on the merits. *Eitel*, 782 F.2d at 1472. However, the very existence of Federal Rule of Civil Procedure 55(b) suggests this policy alone is not dispositive. *C3 Int'l*, 2022 WL 16814859, at *7.

Here, a decision on the merits is impractical, if not impossible, because Cornerstone has failed to respond to the allegations in the Complaint. *See Baccam*, 2017 WL 5952168, at *8. Accordingly, this factor does not weigh in favor of or against entering default judgment.

### 7. Balancing the *Eitel* Factors

Having considered and balanced the seven *Eitel* factors, the Court finds the factors weigh in favor of entering default judgment against Cornerstone. Plaintiffs' application for entry of default judgment is **GRANTED**.

### B. Terms of Judgment

The Court must now decide the terms of the judgment against Defendants. Plaintiffs request the Court award them $48,203.32 in damages. [Dkt. 35 at 25]. Under Federal Rules of Civil Procedure Rule 55, a court must conduct an accounting and determine damages in entering a default judgment. Additionally, relief granted in default judgment must not "differ in kind" or "exceed in amount" what the plaintiff stated in the complaint, as to give the defendant "meaningful notice." Fed. R. Civ. Pro. 54(c); *Family Tree Farms, LLC v. Alfa Quality Produce, Inc.*, No. 1:08–cv–00481–AWI–SMS, 2009 WL 565568, *4 (E.D. Cal. Mar. 4, 2009).

As detailed above, the Court modifies and grants Plaintiffs' request for damages in the total amount of $42,204.49.

## V. CONCLUSION

For the above reasons, the Court **GRANTS** Plaintiffs' Motion in the amount of $42,204.39. A separate judgment will be issued along with this order.

**IT IS SO ORDERED.**

DATED: October 22, 2024

SUNSHINE S. SYKES
United States District Judge